**UNITED STATES of America,**
**Plaintiff,**

v.

**Audie Denver WHEELER, Defendant.**

**Criminal Case No. 00–50032–01.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 15, 2001.

Mark C. Jones, AUSA, Flint, MI, for Plaintiff.

David S. Steingold, Detroit, MI, for Defendant. ·

### ORDER

GADOLA, District Judge.

On June 22, 2001, this Court ordered that Attorney David S. Steingold (P29752) appear on July 12, 2001 and show cause as to why he should not be sanctioned for recklessly or in bad faith filing a motion for a new trial. On July 12, 2001, a hear-ing was held on this matter before the Honorable Paul V. Gadola, and all parties were given an opportunity to appear and argue in support of or in opposition to the imposition of sanctions. For reasons set forth below, this Court imposes sanctions on Attorney Steingold for reckless conduct.

### Factual and Procedural Background

On June 11, 2001, Attorney Steingold filed a Motion for a New Trial asserting the following:

Juror Williams–Robinson, the fore-person of the jury that convicted Defendant Audie Wheeler, had improper communications with persons outside the jury regarding the case while it was being tried, had improper communications with other jurors in the case while the matter was being tried and failed to inform this Court of her familiarity with Defendant Audie Wheeler both before and during the trial of this case.

(Def.Mot.¶ 4.) Attorney Steingold attached an affidavit from Krystal Butterfield who averred that, "Ms. Williams–Robinson was a juror in the Federal Court Trial of Audie Wheeler" (Butterfield Aff. ¶ 3), that "Ms. Terinna May [is] the daughter of Ms. Williams–Robinson" (*id.* ¶ 2), and that on several occasions during the course of the trial Ms. Williams–Robinson had conversations with Ms. May and other jurors about the substance of the court proceedings and the jury's projected verdict (*see id.* ¶¶ 4–11). The affidavit was signed by Butterfield on May 25, 2001 and was notarized by Attorney and Notary Public Tracie D. Palmer (P53555) in the "State of Michigan," "County of Wayne" as follows: "On this 25th day of May, 2001, before me personally appeared Krystal Butterfield to me known to be the person(s) described herein, and who executed the foregoing instrument, and she acknowledged that she voluntarily executed the same." (*Id.*

at 2.) Attorney Steingold stated that other witnesses would attest at a hearing to facts similar or identical to those presented by Butterfield. (*See* Def. Mot. ¶ 6.)

In response, the Government attached a copy of the peremptory challenge sheet showing that Attorney Steingold, in his own-handwriting, exercised a peremptory challenge and dismissed Ms. Williams–Robinson before the jury was impanelled. (*See* Gov't Attach. 3.) The Government also attached the "Jury Sign In Sheet" showing that Ms. Williams–Robinson was not among the jurors in this case (*see* Gov't Attach. 4), and a copy of the Verdict Form showing that the jury fore-person was Kevin M. Berryman (*see* Gov't Attach. 1). Thus, Attorney Steingold should have been well aware that Ms. Williams–Robinson was not the fore-person and was not even a juror.

On June 22, 2001, this Court ordered Attorney Steingold to appear and show cause as to why he should not be sanctioned for recklessly or in bad faith filing a motion for a new trial because the most basic inquiry under the circumstances would have revealed that his allegations as to Ms. Williams–Robinson had no evidentiary support. This Court also subpoenaed Krystal Butterfield, the affiant who supported Attorney Steingold's contentions.

This Court subsequently received a letter from Attorney Steingold dated June 21, 2001 and addressed to Assistant United States Attorney Mark C. Jones. In that letter, Attorney Steingold stated that,

> Prior to sentencing, I was contacted by several individuals who swore that a young lady name[d] Terrina May had discussed the trial in which her mother was a sitting juror. No-one was quite certain of the mother's last name as she had been married numerous times, but they all insisted that she was on the Wheeler jury and had made statements that you saw in the motion. At first I was informed that Ms. May was going to come forward but had discussed with an attorney the serious consequences her mother would face if she violated her oath, and she changed her mind. I was then given by no less than four (4) persons, the details of the events that took place, as described in the motion. Everyone was willing to sign an affidavit and, in fact, I was in the process of arranging to meet with several of the other individuals when the misidentification of the juror came to light.
>
> I had advised all of these people of the serious consequences of making a false statement, and suggested that they speak to an attorney before becoming a witness. All indicated they were telling the truth about Terrina May and wanted to testify in an effort to force Ms. May to tell the truth.
>
> Part of the problem with the misidentification was mine. I have enclosed a copy of my chart in which you will see, that I failed to note Ms. Marcella Williams–Robinson as having been peremptoried out. . . .
>
> I have withdrawn the motion and have informed Mr. Wheeler, in no uncertain terms, that I would not be filing another motion to dismiss or any other motion. I intend to ask someone else to be appointed to represent Mr. Wheeler on appeal.
>
> It may well be that the person who is the mother of Terrina May was on the jury. If that person can be identified, I suspect that some other attorney may file a motion as, if the allegations are true, they certainly are serious and there needs to be some inquiry. I feel somewhat victimized and tremendously embarrassed over misidentifying the juror as well as indicating that she was the

foreperson. For that I offer you my sincere apology.

(Letter from David S. Steingold to Mark C. Jones, June 21, 2001.)

At the hearing before this Court on July 12, 2001, Attorney Steingold stated on the record that before filing the motion he never confirmed whether the person identified by name in the motion actually was a juror, nor did he investigate the veracity of the representations on which the motion was based. In particular, he never attempted to contact Ms. May. Furthermore, Attorney Steingold obtained Butterfield's signature in Flint on the day of Defendant's sentencing but did not have his associate "notarize" it with false representations until he returned to his office in Detroit at some later time. Also after the affidavit was signed, Attorney Steingold added information to the first unsigned page of the affidavit of which the affiant had no knowledge. Krystal Butterfield testified that she never appeared before a notary public—on the day she signed the affidavit or any other time in her life. In addition, Butterfield testified that she had never represented to Attorney Steingold that Ms. May was the daughter of Ms. Williams–Robinson, and the statement that "Ms. Terinna May [is] the daughter of Ms. Williams–Robinson" was not in the version of the affidavit that she signed. In short, Attorney Steingold submitted a bogus affidavit that he supplemented without the affiant's knowledge based on hearsay about hearsay that he failed to investigate in the least.

On July 16, 2001, Attorney Steingold filed "Defense Counsel's Supplemental Memorandum in Response to Order to Show Cause." In that Supplemental Memorandum, Attorney Steingold states that he was skeptical of the allegations that a juror engaged in improper conduct and reiterated that he sought to convey to everyone involved the importance and seriousness of the allegations. He acknowledged that he should have investigated the underlying facts and that his "failure to do so was negligent, but not willful," (Supp. Mem. at 4), and "certainly was not done with any malicious intent" (*id.* at 6). Attorney Steingold stated that, "[m]y greatest fault in this situation was in taking anyone's word for anything in this type of situation." (Supp. Mem. at 4.) He concluded by stating that, "[o]ften, timing makes it impossible to have a notary physically present when a document is signed," although he reassured the Court that he "certainly will never engage in such a practice in the future." (Supp. Mem. at 7.)

**Discussion**

The Court may require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees" reasonably incurred as a result of multiplying the proceedings in a case "unreasonably and vexatiously." *See* 28 U.S.C. § 1927. Moreover, it is well settled that courts have inherent authority to impose sanctions on an attorney for reckless or bad faith conduct during the course of litigation. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *United States v. Wallace,* 964 F.2d 1214, 1217–18 (D.C.Cir.1992).

"Recklessness is defined as more than mere negligence but less than intent." *In re Champion Enterprises, Inc., Securities Litigation,* 144 F.Supp.2d 848, 858 (E.D.Mich.2001) (citing *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 n. 36 (6th Cir.1979)); *see* Black's Law Dictionary (7th ed.1999) (defining "recklessness" as involving "a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing"); *see also Smith v. Wade,* 461 U.S. 30, 45, 103 S.Ct.

1625, 75 L.Ed.2d 632 (1983) (describing recklessness as short of actual malicious intent). The Sixth Circuit has defined "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738, 741 (6th Cir.1980); *see* Black's Law Dictionary (7th ed.1999) (defining "recklessness" as "[c]onduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk").

■ This Court finds that Attorney Steingold's behavior rises to the level of recklessness. By his own admission, Attorney Steingold was negligent; he breached the duties he owes his client, the Government, and this Court. While his conduct may not have been with malicious intent, this Court finds that it also was more than merely negligent. For all his warnings to everyone involved, Attorney Steingold failed to appreciate the seriousness of his own actions in leveling charges of misconduct in a public document against a mis-identified juror, failing to undertake the most basic investigation of the underlying facts, supplementing an affidavit after it was signed to include information of which the affiant has no knowledge, and arranging a false notarization by his associate. Such conduct was highly unreasonable and an extreme departure from the standards of behavior expected of attorneys who practice before the federal courts.

Therefore, the Court concludes that the Motion for a New Trial was submitted recklessly and that Attorney Steingold should be sanctioned, accordingly, as follows. First, Attorney Steingold is required personally to pay the costs, expenses, and attorneys' fees incurred by the Government in responding to the motion, pursuant to 28 U.S.C. § 1927. Second, he is required personally to pay $2,500 to the Court as a sanction for reckless conduct. Third, he is required to file a certification with this Court that he has submitted a copy of this Order to Chief Judge Lawrence P. Zatkoff of the United States District Court for the Eastern District of Michigan and the Attorney Grievance Commission of the State of Michigan.

Finally, the Court notes that in spite of the alleged quantity of evidence and gravity of the claims underlying this fiasco, Attorney Steingold has not sought to correct the motion with reliable and credible support but, from all outward appearances, has abandoned the effort altogether.

**Conclusion**

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Attorney David S. Steingold must personally pay the costs, expenses, and attorneys' fees incurred by the Government responding to Defendant's motion for a new trial. The Government must file an accounting of the costs, expenses, and attorneys' fees within 14 days of entry of this Order, and Attorney Steingold may file a response to that accounting within 14 days of the filing of that accounting.

**IT IS FURTHER ORDERED** that, within 30 days of the entry of this Order, Attorney Steingold must submit to the Clerk of the Court a certified check or money order made payable to the "Clerk of the Court" in the amount of $2,500.00 as a sanction for reckless conduct.

**IT IS FURTHER ORDERED** that, within 30 days of the entry of this Order, Attorney Steingold must file a certification with this Court that he has mailed a copy of this Order to Chief Judge Lawrence P. Zatkoff of the United States District Court for the Eastern District of Michigan and the Attorney Grievance Commission locat-

ed at 243 W. Congress, Suite 256, Marquette Building, Detroit, Michigan 48226.

**SO ORDERED.**